524 December 11, 2025 No. 50

IN THE SUPREME COURT OF THE
STATE OF OREGON

Jerry C. STONE,
Personal Representative for the Estate of
Marika Jeanne Stone, an Oregon Resident,
*Respondent on Review,*

*v.*

Shante Lynn WITT
et al,
*Defendants,*
*and*

Nancy L. BRENNAN, DO;
St. Charles Health Systems, Inc.,
dba St. Charles Family Care, an Oregon Corporation;
High Desert Personal Medicine, LLC,
an Oregon limited liability company,
Kevin Rueter, MD;
Mosaic Medical, an Oregon Corporation;
and Walgreen Co., a Foreign Corporation,
*Petitioners on Review.*
(CC 18CV14401) (CA A176439) (SC S071097)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 9, 2025.

Hillary A. Taylor, Keating Jones Hughes, P.C., Portland, argued the cause and filed the briefs for petitioners on review. Also on the briefs were Ruth A. Casby and Janet M. Schroer, Hart Wagner, LLP, Portland; and Thomas F. Armosino, Jr., Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C., Medford.

Kathryn H. Clarke, Kathryn H. Clarke Attorney at Law, Portland, argued the cause and filed the brief for respondent on review.

_____

* Appeal from Deschutes County Circuit Court, Jack L. Landau, Senior Judge. 331 Or App 722, 548 P3d 497 (2024).

Alice S. Newlin, Lindsay Hart, LLP, Portland, filed the brief for *amici curiae* Oregon Medical Association and American Medical Association. Also on the brief was Anne Wynn Decker.

Elizabeth C. Savage, Elizabeth Savage Law, P.C., Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Thomas M. Christ, Sussman Shank LLP, Portland, filed the brief for *amicus curiae* National Association of Chain Drug Stores. Also on the brief was David Schur and Benjamin G. Shatz, Manatt, Phelps and Phillips, LLP, Washington, DC.

FLYNN, C.J.

The decision of the Court of Appeals is affirmed. The limited judgments of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.

Garrett, J., concurred and filed an opinion.

Bushong, J., concurred and filed an opinion.

**FLYNN, C.J.**

The question in this case is whether medical professionals, alleged to have negligently prescribed and distributed drugs to a patient, may be liable for allegedly foreseeable physical injuries that the patient subsequently caused to another person. Defendants are medical providers and a pharmacy who, according to plaintiff, negligently prescribed and dispensed drugs to a patient who had been abusing the drugs. That patient later drove a vehicle while impaired, veered across the center lane, and struck and killed a cyclist (Stone). Plaintiff, the personal representative of Stone's estate, alleges that Stone's death was the foreseeable result of defendants' negligence. Defendants moved to dismiss, arguing that plaintiff could not state a claim without a special relationship with defendants, which plaintiff lacked. The trial court agreed and dismissed plaintiff's claims against defendants, but the Court of Appeals reversed.

On review of that decision, we agree with the Court of Appeals that plaintiff's allegations state a claim for liability in negligence. The longstanding rule of common-law negligence in Oregon is that "liability for harm actually resulting from [a] defendant's conduct depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff," which is what plaintiff has alleged in this case. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Plaintiff's allegations thus state a claim for ordinary negligence liability that does not depend on the existence of a special relationship between a defendant and the injured party.

Defendants' contention that medical professionals, nevertheless, should be liable for harm only to those with whom they have a professional relationship effectively seeks an exception to cut off ordinary negligence liability for negligent medical professionals who foreseeably cause harm to a nonpatient. We decline to create such an exception. Concern that it might be unfair to hold medical professionals liable for harm caused to nonpatients is addressed by the requirements that a medical professional's liability for ordinary

negligence is limited to physical harm resulting from conduct in treating a patient that in fact unreasonably creates a foreseeable risk of harm to nonpatients. A medical professional whose conduct is reasonable in light of the standard of care applicable to the treatment of patients will not be liable in negligence for harm later caused by that patient. Accordingly, we affirm the decision of the Court of Appeals and remand the case to the trial court.

## I.  BACKGROUND

We take the facts from plaintiff's operative complaint, assuming the truth of those allegations and giving plaintiff the benefit of all reasonable inferences that may be drawn from them. *See Bohr v. Tillamook County Creamery Assn.*, 373 Or 343, 347, 567 P3d 413 (2025) (describing standard for reviewing an order granting dismissal of complaint for failure to state a claim).

Defendants are physicians and a pharmacy who prescribed and provided highly addictive drugs—namely, Clonazepam, Carisoprodol, and Hydrocodone—to their patient Witt, who had an addiction to, and abused, those drugs. While impaired by a combination of those drugs, Witt drove her truck one afternoon on a rural two-lane road outside of Bend. As a result of that impairment, Witt drove across the center line, veered onto the opposite shoulder, and struck and killed Stone.

Plaintiff is the personal representative of Stone's estate. He brought wrongful death claims, under a negligence theory, against Witt herself and against multiple medical professionals—medical providers who had treated Witt for pain and anxiety in the years leading up to the accident and a pharmacy that Witt had used to fill her prescriptions.[1] Specifically, plaintiff alleged that the medical providers had prescribed Witt addictive drugs beyond what was needed to treat Witt's medical problems and despite

---

[1]  The medical providers who are parties to this appeal are Dr. Nancy Brennan, Dr. Kevin Rueter, St. Charles Health System, Inc., High Desert Personal Medicine, LLC, and MosaicMedical. The pharmacy that is a party to this appeal is Walgreen Co. We refer to those parties collectively as "defendants." Plaintiff brought negligence claims against others as well, including Witt, other medical providers, and other pharmacies. But the viability of those claims is not before us.

knowing, or having reason to know, that Witt was abusing the drugs. Plaintiff alleged that pharmacists had continued to dispense drugs to Witt despite knowing, or having reason to know, that she had a substance abuse disorder and was seeking excessive amounts of the drugs. Plaintiff also alleged that the medical defendants (both the providers and the pharmacists) had failed to adequately warn Witt of the risk of driving while taking the prescribed drugs. And plaintiff alleged that it was foreseeable that Witt, having "developed a substance use disorder associated with prescribed addictive drugs," would overuse those drugs, drive while impaired, and cause harm to others on the road. Finally, plaintiff alleged that the actions of each defendant had been a cause of the resulting collision in which Stone was killed. According to plaintiff, those facts, if proven, would establish that the defendants are liable in negligence for the harm to Stone.

Defendants moved to dismiss plaintiff's complaint on multiple bases, including that plaintiff's complaint did not state a claim for liability based on negligence, because medical professionals should be liable in negligence only for harm to their patients and others with whom they have a professional relationship. The trial court granted the motions, agreeing with defendants that "medical professionals are not liable to non-patient third parties for their professional negligence."[2] In reaching that result, the trial court relied substantially on this court's decision in *Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 412 P3d 133 (2018), which it understood to have set controlling limits on the potential liability of medical professionals for harm caused to nonpatients. We discuss that decision more fully below. At this point, it is sufficient to note that, in *Tomlinson*, this court described criteria that it considered in

---

[2]   Most of the defendants challenged the viability of plaintiff's claims through motions to dismiss under ORCP 21 A(1)(h) for failure to state a claim. MosaicMedical filed a motion for summary judgment but raised the same legal challenge to the sufficiency of plaintiff's complaint. We, therefore, discuss and analyze all of the motions under the standard appliable to motions to dismiss for failure to state a claim. *See Johnson v. Johnson*, 302 Or 382, 388 n 5, 730 P2d 1221 (1986) (explaining that a summary judgment motion that merely challenges the legal sufficiency of plaintiff's complaint is "functionally equivalent" to a motion to dismiss for failure to state a claim or for a judgment on the pleadings (internal citations omitted)).

holding that the defendant medical providers could be liable in negligence for purely emotional and economic injuries that the parents of a patient allegedly suffered as a result of risks of harm that the medical providers failed to prevent. *Id*. at 447-51.

Plaintiff appealed, and the Court of Appeals reversed. *Stone v. Witt*, 331 Or App 722, 736, 548 P3d 497 (2024). The court relied on its own decision in *Zavalas v. Dept. of Corrections*, 124 Or App 166, 861 P2d 1026 (1993), *rev den*, 319 Or 150 (1994), in which the Court of Appeals had held that a physician could be liable for negligently prescribing a drug to a patient who then drove under the influence of that drug and caused physical harm to several nonpatient children. *Id.* at 170; *see Stone*, 331 Or at 730-31 (describing facts and holding of *Zavalas*). The court reasoned that *Tomlinson* was consistent with the ordinary rule of negligence liability on which *Zavalas* was based. *Stone*, 331 Or at 735. The court held, as a result, that plaintiff stated a claim for relief. *Id*. at 736. We allowed defendants' petition for review and now affirm the decision of the Court of Appeals.

## II.   ANALYSIS

The question on review is whether plaintiff's complaint alleges ultimate facts sufficient to constitute a claim for relief against defendants for negligently causing the death of Stone. In evaluating that question, "we assess the legal effect of the factual allegations in the complaint and all reasonable inferences that may be drawn from those allegations." *Tomlinson*, 362 Or at 439 (internal quotation marks and modifications omitted). Our task "is to 'determine whether upon the facts alleged * * * no reasonable factfinder could decide one or more elements of liability'" in favor of plaintiff. *Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015) (quoting *Fazzolari*, 303 Or at 17). Here, plaintiff contends that the complaint alleges a viable claim for wrongful death based on common-law negligence.

The personal representative of a decedent may state a claim for wrongful death "[w]hen the death of a person is caused by the wrongful act or omission of another" for which the decedent "might have maintained an action[] had

the decedent lived." ORS 30.020(1); *see Storm v. McClung*, 334 Or 210, 221, 47 P3d 476 (2002) (identifying "the derivative nature" of Oregon's wrongful death claim). Here, plaintiff has alleged that defendants' negligence caused Stone's death, so the viability of that claim depends on whether, under the alleged facts, Stone could have maintained a negligence claim against defendants had she lived.

Ordinarily, a claim for liability based on negligence merely requires the plaintiff to plead and prove facts to permit a finding that the defendant's "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari*, 303 Or at 17; *see also Sloan v. Providence Health Systems-Oregon*, 364 Or 635, 643, 437 P3d 1097 (2019) ("[W]hen asserting an ordinary negligence claim, a plaintiff must establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff."). For purposes of the issue before us, there is no dispute that plaintiff's complaint alleges the kind of facts that ordinarily state a claim for negligence liability—that defendants' conduct unreasonably created a foreseeable risk that Witt would drive while under the influence of the prescribed drugs and cause the kind of physical harm that befell Stone.

Defendants argue, however, that this case is different because defendants are medical professionals. Defendants contend that the liability of medical professionals depends on establishing that the injured party was a patient or had some other special relationship with the medical professional, which Stone has not alleged. Therefore, defendants argue, they cannot be liable for Stone's death. Defendants' argument has two parts.

First, defendants argue that, as medical professionals, their liability for negligently caused harm is generally limited to the individuals to whom they are providing care. In support of that, defendants rely on *Mead v. Legacy Health System*, 352 Or 267, 283 P3d 904 (2012). There, this court stated that, "[i]n Oregon, as in most states, a physician-patient relationship is a necessary predicate to stating a medical malpractice claim." *Id.* at 276. In *Mead*, this court

affirmed a jury's verdict in favor of the defendant after concluding that the evidence presented at trial permitted the jury to find that the defendant had not entered a physician-patient relationship with the plaintiff. *Id*. at 283. Defendants in this case rely on *Mead* as stating a general rule that medical professionals are not liable in negligence to nonpatient third parties like Stone.

Second, defendants argue that this court has recognized only a narrow exception to that general rule, and that the exception is limited to the criteria that we identified in *Tomlinson*. In *Tomlinson*, we held that the parents of a child born with a genetic disorder had a sufficient relationship with their older child's physicians to pursue a negligence claim for emotional injuries that they allegedly suffered when the defendants failed to diagnose the genetic disorder in the parents' older child. 362 Or at 454. In recognizing that claim, this court emphasized that the parents, as the older child's legal guardians, already were in a relationship with their child's physicians that created an expectation that the physicians would correctly diagnose the child's genetic disorder and communicate that diagnosis to the parents. *Id*. at 447. We reasoned that "the important role that genetic information must play in reproductive decisions" made it "especially reasonable" for the parents to "expect to receive warnings about potential risks to them that are germane to the physician's medical diagnosis of the child." *Id*. And we emphasized that, "under the facts alleged in the parents' claim, there was no possibility that defendants would be required to divide their loyalties between [the parents' older child] and the parents." *Id*. at 448. According to defendants, those factors do not support recognizing liability under the facts alleged in plaintiff's complaint.

The problem with defendants' argument is that it rests on an incorrect premise—that ordinary negligence principles do not apply to those acting as medical professionals. This court has never held that liability for negligent medical professionals is limited to those with whom they have some existing professional relationship. Defendants' proposal to the contrary reflects a misunderstanding of *Mead* and *Tomlinson*, as well as a misunderstanding of how

a professional's specialized skills inform the scope of liability in a negligence claim.

The relationship between a professional service provider and a patient (or client) can affect the nature of the obligation owed to others. But that relationship does not create a "protective bubble" for the professional that precludes liability when the professional's unreasonable conduct in treating a patient also creates a foreseeable risk of physical harm to people in the world generally. In this case, plaintiff alleges facts sufficient to permit a finding that defendants' conduct created a foreseeable and unreasonable risk that their patient would directly injure members of the public in the way that Witt actually injured Stone. As we will explain below, those allegations state a claim for common-law negligence, and no statute or common-law principle protects defendants from liability for the physical harm that they caused simply because they were acting as medical professionals when they engaged in the conduct alleged to have been negligent. Before turning to defendants' arguments in greater detail, it is helpful to revisit some of the fundamental principles of common-law negligence.

A.   *Fundamental Principles of Negligence*

An essential function of the law of negligence is defining the factual circumstances in which a person must take care with regard to the interests of others and the liability that flows from a failure to do so. Traditionally, courts—including ours—have referred to that concept using the terminology of "duty." *See Sloan*, 364 Or at 643 (explaining that, traditionally, a negligence claim required proof that "the defendant had a duty to the plaintiff"); *Fazzolari*, 303 Or at 4 (explaining that "'[d]uty' expresses the formal link between factual conduct and legal liability"). We cautioned in *Fazzolari*, however, that framing the question of liability in terms of whether the defendant owes a "duty" to the plaintiff can be unhelpful when liability is premised on the ordinary obligation—or "duty"—that, in general, every person owes to every other person, in contrast to liability that depends on the existence of special circumstances or relationships. 303 Or at 3-18. As we explained, in cases premised on that ordinary obligation, the duty-breach-causation formulation

"at best is legal shorthand, because a complaint must allege facts, not legal theories," and "[a]t worst it obscures the question whether a complaint invokes a special duty to the plaintiff arising from a particular status, relationship, or external standard, or relies only on the general common law governing liability for negligence toward strangers." *Id*. at 15.

Broadly speaking then, *Fazzolari* helped us conceptualize the universe of negligence claims as falling into two overarching categories: those in which liability for harm actually resulting from the defendant's conduct is based on the ordinary rule of negligence, and those in which special circumstances either expand or limit the scope of liability for harm actually resulting from the defendant's conduct. *See id*. at 17 (explaining that, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff"). And, at least since *Fazzolari*, it has been clear that, for an "ordinary negligence claim," a plaintiff is "required to establish that defendant's conduct 'unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'"[3] *Scott v. Kesselring*, 370 Or 1, 12, 513 P3d 581 (2022) (quoting *Fazzolari*, 303 Or at 17); *see Piazza v. Kellim*, 360 Or 58, 70, 377 P3d 492 (2016) (explaining that the measure of liability for ordinary negligence—"formerly described in terms of 'duty' and 'breach'"—is now framed as "whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff"). Most of that standard for liability comprises factual questions to be decided by the factfinder, including questions about

---

[3] *Fazzolari* actually credited Justice O'Connell, in an earlier Oregon case, for articulating "the test both of negligent conduct and of liability for its consequences without phrasing the test in terms either of causation or of duty." 303 Or at 14 (citing *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970)). The court also discussed an article published in 1934 as questioning "whether 'duty' served any necessary or useful function in common-law negligence cases." *Id*. at 5-6 (citing Percy H. Winfield, *Duty in Tortious Negligence*, 34 Colum L Rev 41 (1934)).

foreseeability—namely, whether the defendant's conduct was unreasonable in light of foreseeable risks of harm and whether the plaintiff's injury was among the types of foreseeable harms that made the defendant's conduct unreasonable. *Piazza*, 360 Or at 70 (describing the "two overlapping" roles of foreseeability). As to those fact questions, the court's task is to "'determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party.'" *Chapman*, 358 Or at 205 (quoting *Fazzolari*, 303 Or at 17).

But the test for liability also incorporates a legal determination of whether the alleged harm is to what the common law will recognize as a "protected interest." *See Fazzolari*, 303 Or at 7 (explaining that "common-law negligence traditionally has excluded some categories of quite predictable injuries and claimants" from the scope of liability). The most universal protected interest is the "interest in being 'free from physical harm at the hands of another,'" which includes harm to either person or property. *Moody v. Oregon Community Credit Union*, 371 Or 772, 784, 542 P3d 24 (2023) (quoting *Philibert v. Kluser*, 360 Or 698, 703, 385 P3d 1038 (2016)); *see also Scott*, 370 Or at 17 ("In Oregon, all persons have a legally protected interest to be free from physical harm at the hands of another." (Internal quotation marks omitted.)) Thus, a more specific statement of the rule for ordinary negligence liability is that, "[i]n the context of that general interest to be free from physical harm, a defendant is liable to a plaintiff for damages resulting from the defendant's conduct that 'unreasonably created a foreseeable risk *** of the kind of harm that befell the plaintiff.'" *Philibert*, 360 Or at 703 (quoting *Fazzolari*, 303 Or at 17).

There are two corollaries to that rule. First, liability in negligence ordinarily does not extend to a plaintiff's solely economic or solely emotional harm, even when those categories of harm are "quite predictable."[4] *Fazzolari*, 303 Or at 7. Second, liability ordinarily does not extend to harm that the defendant merely failed to intervene to prevent,

---

[4] We say "solely" economic or emotional harm, because, when a plaintiff establishes a negligence claim based on conduct causing physical injury, Oregon law allows recovery for economic loss and damages for emotional distress as well. *Scott*, 370 Or at 17.

*i.e.*, harm resulting from a risk that the defendant did not create. *Tomlinson*, 362 Or at 442-43; *Fazzolari*, 303 Or at 7 (describing harm from "a bystander's failure to rescue" as one of the "traditionally excluded categories of quite predictable injuries and claimants"). Both limitations were at issue in *Tomlinson*, in which this court held that "foreseeability of the [plaintiffs'] injury cannot, by itself, establish" that the defendants were liable in negligence, for two reasons: first, because the plaintiffs alleged "only economic and emotional injuries," and second, because the plaintiffs alleged "that their injuries resulted from defendants' failure to take affirmative steps to protect them from a risk of harm that defendants did not create." 362 Or at 442-43. To support the latter proposition, *Tomlinson* pointed to a pre-*Fazzolari* case, in which this court had held that a car owner could not be found negligent on the basis of his failure to warn a mechanic about the owner's concerns relating to the way the mechanic had jacked up the car, because "'[t]here is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty.'" *Id*. at 443 (quoting *Cramer v. Mengerhausen*, 275 Or 223, 227, 550 P2d 740 (1976)).

For those categories of harm that ordinary negligence liability does not reach, however, liability may still arise in special cases out of circumstances that create an obligation on the part "of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm."[5] *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004) (internal quotation marks omitted); *see id*. (describing liability standard for purely economic harm); *Philibert*, 360 Or at 704 (explaining that, "even where a plaintiff has not been physically harmed, recovery for foreseeable emotional damages is available when the defendant's conduct infringed some legally protected interest apart from causing the

---

[5] That reading of our case law is consistent with the general framework used in 1 *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* (2010). The *Restatement* identifies a general duty to avoid unreasonably creating risks of physical harm. *See* 1 *Restatement* § 7(a), (b) (explaining that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm," which may be subject to exceptions for "a particular class of cases").

claimed distress" (internal quotations omitted)). Those spe-
cial obligations can flow from sources of law like statutes or
court orders, or they can arise because of an undertaking or
a relationship between the plaintiff and defendant for which
the common law recognizes a special obligation. Examples
of the former include a father's claim for emotional damages
against the mother's lawyer who—in violation of a court
order—delivered a passport to the mother that resulted
in the mother leaving the country with the couple's child,
and a woman's claim for emotional damages against police
officers who—in violation of a statutory duty to enforce a
restraining order—failed to arrest her ex-spouse, who later
threatened her. *Philibert*, 360 Or at 705-06 (citing *McEvoy v.
Helikson*, 277 Or 781, 784, 562 P2d 540 (1977) and *Nearing
v. Weaver*, 295 Or 702, 707-09, 670 P2d 137 (1983)). And a
classic example of the latter is the relationship between
medical professionals and their patients, for which the com-
mon law generally recognizes obligations both to protect
the patient from purely economic or emotional harm and to
"affirmatively protect" the patient from harm that the pro-
fessional did nothing to create. *Tomlinson*, 362 Or at 443.
As we explained in *Fazzolari*, "duty plays an affirmative
role" in those cases in which "an injured plaintiff invokes
obligations arising from a defendant's particular status or
relationships, or from legislation, *beyond* the generalized
standards that the common law of negligence imposes on
persons at large." 303 Or at 10 (emphasis added).

The label "duty" also continues to play a role when
"invoked defensively to limit the reach of liability even
though harm was caused by conduct falling short of a legal
obligation." *Fazzolari*, 303 Or at 4. Historical examples
include the statutorily abolished common-law doctrine of
implied assumption of risk. *See Thompson v. Weaver*, 277
Or 299, 302-05, 560 P2d 620 (1977) (discussing abolished
doctrine). Modern examples include statutes limiting the
common-law liability of landowners who open their land for
recreational use, ORS 105.682, or of social hosts for harm
caused by intoxicated guests, ORS 471.565.

In assessing whether a complaint alleges ultimate
facts sufficient to state a claim in negligence, a critical

question, therefore, is whether the plaintiff's claim alleges harm from breach of the general obligation that everyone owes to everyone else—that is, whether the plaintiff is alleging liability based on ordinary negligence, which does not depend on the existence of a special circumstance or relationship—or whether the plaintiff is alleging liability for a category of harm that ordinary negligence does not reach. It can be helpful to think of the latter as a claim for special liability in negligence, because liability depends on special circumstances that give rise to liability beyond the ordinary liability that arises in claims predicated on the obligation that everyone generally owes to everyone else "to exercise reasonable care to prevent foreseeable harm." *Oregon Steel Mills*, 336 Or at 341 (internal quotation marks omitted).

For example, a negligence claim alleging solely economic or emotional harm, or harm resulting solely from a defendant's failure to act, must allege facts sufficient to show the special circumstances that warrant liability, because negligence liability ordinarily does not extend to those categories of harm. But, if a negligence claim alleges that the defendant's *acts* caused *physical* harm to the plaintiff, liability "depends on whether those acts unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari*, 303 Or at 17. A plaintiff seeking relief under those facts is asserting an ordinary negligence claim and is not required to plead a special relationship to the defendant or other special circumstances to support liability. Liability in an ordinary negligence claim does not depend on the existence of a special circumstance or relationship, because the obligation to avoid unreasonably creating foreseeable risks of physical harm generally applies to everyone all the time. *See Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 347 P3d 766 (2015) (explaining that liability for "an ordinary negligence claim" is based on the proposition that, generally, "everyone owes each other the duty to act reasonably in light of foreseeable risks of harm"); *see also Scott*, 370 Or at 12 (explaining that, "[i]n this case, the parties do not invoke a particular status, relationship, or standard of conduct, and we therefore consider plaintiff's claim to be 'an ordinary negligence claim,' in which plaintiff was required to establish that defendant's conduct 'unreasonably created

a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff'" (quoting *Fazzolari*, 303 Or at 17)).

Thus, we have emphasized that, "when asserting an ordinary negligence claim, a plaintiff must establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan*, 364 Or at 643; *see also Chapman*, 358 Or at 205 ("[W]hen a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff.").

Justice Bushong's concurrence criticizes how this court characterizes the elements of an ordinary negligence claim. According to the concurrence, a plaintiff can state a claim for ordinary negligence without pleading that the defendant's conduct created the risk of harm that injured the plaintiff. 374 Or at 558 (Bushong, J., concurring). The disagreement appears to stem from a different concept of an "ordinary negligence claim" and a mistaken concern that our traditional formulation of that claim somehow undermines the significance of foreseeability.

As used in this opinion, and as used in the prior decisions quoted above, that phrase "ordinary negligence" refers to a theory of negligence that does not depend on the plaintiff pleading and proving facts that establish a special circumstance or relationship—that is, a theory of negligence alleging the breach of an obligation that everyone owes to everyone else all the time. We reiterate that, absent a special circumstance or relationship, a plaintiff generally states a viable theory of negligence when a plaintiff alleges facts to permit a finding that the defendant unreasonably created a foreseeable risk of physical harm. That is an ordinary negligence claim. *Scott*, 370 Or at 12; *Sloan*, 364 Or at 643. We use that formulation to clearly distinguish those theories of negligence that *do* require a plaintiff to plead facts establishing a special circumstance or relationship—namely, claims alleging solely economic or emotional injuries and

claims alleging that the defendant failed to rescue or otherwise failed to take affirmative steps to protect the plaintiff from a risk of harm that the defendant did not create. Those are non-ordinary (or "special") negligence claims.

Justice Bushong asserts that what matters is foreseeability and not whether the defendant created the risk of harm. However, foreseeability and risk creation serve distinct functions. To be sure, foreseeability is a requirement in our test for ordinary negligence. 374 Or at 533-34 (citing *Piazza*, 360 Or at 70). Without foreseeability, a plaintiff's claim fails. But foreseeability does not inform when a plaintiff must plead and prove facts that establish a special circumstance or relationship; that question is informed by the concept of risk creation, which distinguishes an ordinary negligence claim from failure-to-rescue type claims, for which liability requires a plaintiff to allege facts that establish a special relationship or special circumstance. *See Cramer*, 275 Or at 227 (emphasizing that "[t]here is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty."). A plaintiff is *not* alleging a failure-to-rescue type claim when the plaintiff alleges facts that would establish that the defendant created the risk of harm. Thus, asking whether a plaintiff has alleged facts that would establish that the defendant created the risk of harm is one step in determining that the plaintiff's claim does *not* require allegations of a special circumstance or relationship.[6]

We do not understand Justice Bushong's concurrence to propose that we begin permitting liability in failure-to-rescue type negligence claims without a special circumstance or relationship. Rather, we understand the concurrence's modified description of an "ordinary

---

[6] Even if the plaintiff has alleged that the defendant created the risk of harm, the plaintiff might still need to plead facts establishing a special circumstance or relationship if the plaintiff is alleging a purely economic or emotional harm. The idea of risk creation—that a defendant created a risk of harm, rather than failed to protect against a risk of harm—is largely just intended to track the historical distinction between misfeasance and nonfeasance, which has been important to defining the boundaries of a defendant's liability. *See Brennen v. City of Eugene*, 285 Or 401, 409, 591 P2d 719 (1979) ("As a general rule, one is held to a higher standard of care when he affirmatively acts than when he fails to act at all."). We do not understand Justice Bushong's concurrence to disagree with that historical distinction.

negligence claim," as any claim that alleges that a risk of harm was reasonably foreseeable, to stem from a concern that the traditional concept of *creating* the risk could be used to preclude liability for harm resulting from other types of unreasonable conduct.[7]

We thus pause to emphasize that creation of the risk is a broad and flexible concept. There is—appropriately—no dispute that plaintiff's allegations would establish that defendants' conduct in this case created a foreseeable risk of Witt driving while impaired and colliding with other road users. Indeed, it is likely that in most negligence cases there will be no dispute about whether a defendant's conduct created the risk of harm. Our cases illustrate that even conduct like leaving the keys in a car can "create[] a likelihood" of risk, or increase the risk, that the car will be stolen and driven unsafely. *Mezyk v. National Repossessions*, 241 Or 333, 337, 405 P2d 840 (1965) (holding that those allegations stated a claim for negligence; cited with approval in *Fazzolari*, 303 Or at 20). We agree with the explanation of the concept in 1 *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* (2010)—that "[a]n actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct." *Id.* § 7 comment o.

But, in proposing a modified description of an "ordinary negligence claim" that could include failure-to-rescue type claims, Justice Bushong's concurrence blurs a key distinction between claims that depend on the plaintiff pleading

---

[7] This court's opinions occasionally have used other phrasing in describing the concept that claims for liability based on ordinary negligence require some *creation* of a risk, but those same cases have continued to include that concept when describing the elements of an ordinary negligence claim. *See Towe*, 357 Or at 86 (describing *Fazzolari* standard as, "[i]n effect," framing the question of liability "in an ordinary negligence claim" in terms of "whether the defendant's *conduct resulted in a foreseeable and unreasonable risk* of harm of the kind that the plaintiff suffered" (emphasis added)); *Solberg v. Johnson*, 306 Or 484, 490, 760 P2d 867 (1988) (reasoning that "[a] negligence complaint, to survive a motion to dismiss, must allege facts from which a factfinder could determine," among other things, "that defendant's *conduct caused a foreseeable risk* of harm" (emphasis added)); *Campbell v. Carpenter*, 279 Or 237, 240, 566 P2d 893 (1977) (quoting and adopting reasoning of a New Jersey case that "'negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another'" (quoting *Rappaport v. Nichols*, 31 NJ 188, 201, 156 A2d 1, 8 (1959))).

and proving facts that establish a special circumstance or relationship and claims and claims that do not. That effort to revise our formulation of the test for ordinary negligence also faces an uphill battle, given the numerous cases— quoted in this opinion—which repeatedly identify that distinct requirement for liability in ordinary negligence.[8] And this case presents no reason to fight that battle. Ultimately, the question here is *not* whether to call plaintiff's claim an "ordinary negligence claim." Rather, the question is whether plaintiff's claim depends on alleging facts that establish a special circumstance or relationship. We reiterate that plaintiff's claim does not require pleading or proving a special circumstance or relationship, and we understand Justice Bushong's concurrence to agree with that point.

B.  *Liability of Medical Professionals for Negligent Conduct*

Turning to what is in dispute in this case, plaintiff contends that the complaint alleges facts to support every requirement for ordinary negligence liability, and, as we will explain in greater detail below, we agree. But defendants contend that plaintiff also has alleged facts that preclude ordinary negligence liability, because the complaint alleges that defendants were acting as medical professionals when they engaged in the allegedly negligent conduct. According to defendants, the source of negligence liability for medical professionals arises exclusively from their relationships with the patients they treat, so medical professionals are not subject to the ordinary obligation to avoid unreasonably creating foreseeable risks of physical harm to anyone with whom they do not have a professional relationship. Because the complaint does not allege that defendants had any professional relationship with Stone, defendants conclude that they cannot be liable in negligence for Stone's injuries.

---

[8] The concurrence asserts that none of the cases that articulate the requirement of creation of the risk "*applied* that principle in determining whether a complaint was subject to dismissal because the plaintiff had failed to plead and prove that the defendant's negligent conduct created the risk." 374 Or at 570 n 8 (Bushong, J., concurring) (emphasis in original) (slip op at 16 n 8). But that is precisely why we affirmed the dismissal of the claim in *Mead*, and it is why the claim in *Tomlinson* would have been dismissed except for our recognition of a relationship between the defendants and the plaintiffs sufficient to support liability for harm that the defendants merely failed to protect against.

Framed in the context of the distinction we have described between ordinary negligence liability and special negligence liability, defendants challenge to the sufficiency of the allegations in plaintiff's complaint requires us to consider two key questions: (1) whether a special relationship between the medical providers and Stone is necessary for liability, because the standard for ordinary negligence would not support liability for the harm that Stone suffered; and (2) whether, even if the standard for ordinary negligence would support liability for the harm to Stone, defendants cannot be liable for that harm because of their status as medical providers treating a patient with whom they had a special relationship. Our answer to both questions is "no." As we will explain, the facts alleged in the complaint would support ordinary negligence liability for the harm that Stone suffered. And, as indicated above, defendants' premise that they, nevertheless, cannot be liable in negligence for the harm to Stone rests on a misunderstanding of the role that being a medical professional plays in a negligence claim and a blurring of the distinction between ordinary negligence liability and special negligence liability. Defendants are correct that being a medical professional can alter the path to liability in negligence. But defendants are mistaken that a special relationship is necessary for liability in this case, and they are mistaken that medical professionals can only be liable for harm to those with whom they have a professional relationship.

One way that being a medical professional can alter the path to liability in negligence, as *Tomlinson* emphasizes, is that a physician-patient relationship "can be *one* ground for creating affirmative protections" that go *beyond* the general interest in being free from physical harm at the hands of another. 362 Or at 443 (emphasis in original); *see also Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996) (describing how "certain professional relationships" may warrant "a heightened duty of care" that requires one party to protect interests not covered by an ordinary negligence claim). A common example is a negligence claim based on a medical professional's failure to take some affirmative steps to diagnose a patient's preexisting condition, as was the case in both *Tomlinson* and *Sloan*. *See Sloan*, 364 Or at 637, 645 (negligence claim based on doctor's failure to diagnose

and treat a rib fracture and internal bleeding the patient had suffered from a fall at home; describing the physician's obligation to patients as "an affirmative duty"); *Tomlinson*, 362 Or at 435 (negligence claim based on physicians' failure to diagnose child's developmental disability as a genetic disorder); *see also Moulton v. Huckleberry*, 150 Or 538, 541, 546, 46 P2d 589 (1935) (negligence claim against physician who failed to administer tests that would have identified that nature of plaintiff's injury was a severed patella tendon; explaining that a physician is liable in negligence "for a failure, due to want of the requisite skill or care, to diagnose correctly the nature of the ailment, where injury or detriment results to the patient"). The relationship also may obligate a medical professional, in some circumstances, to protect the patient's purely emotional or economic interests. *See Tomlinson*, 362 Or at 443 (explaining that a physician-patient relationship can create "affirmative protections of a plaintiff's economic and emotional interests under negligence law"); *see also Curtis v. MRI Imaging Services II*, 327 Or 9, 15, 956 P2d 960 (1998) (claim against medical professional for purely emotional distress); *Zehr v. Haugen*, 318 Or 647, 658, 871 P2d 1006 (1994) (allowing claim against medical professional for purely economic harm).

Being a medical professional also provides assurance that what it means to act "unreasonably" in treating a patient will be judged according to the standard of "ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community." *See* ORS 677.095(1) (specifying that physicians have "the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community"); OAR 855-019-0200 (2018) (specifying that pharmacists have a duty to "use that degree of care, skill, diligence and professional judgment that is exercised by an ordinarily careful pharmacist in the same or similar circumstances").[9] And for most negligence claims

---

[9] In 2024, the pharmacist-standard rule was revised and renumbered and now appears in OAR 855-115-0105(1), which requires a pharmacist to "[u]se that degree of care, skill, diligence and reasonable professional judgment that is exercised by a careful and prudent Pharmacist in the same or similar circumstances."

"'against professional persons, expert testimony is required to establish what the reasonable practice is in the community,'" because "a layperson typically would not know what an 'ordinarily careful' surgeon would do under the circumstances." *Trees v. Ordonez*, 354 Or 197, 207, 311 P3d 848 (2013) (quoting *Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971)).

Defendants are mistaken, however, that defendants' relationships with Witt, or the existence of the statutory standards of care, are "the source of liability in this case" or operate as a limit on liability for harm resulting when the acts of the medical professional fall below the applicable standard of care. As an initial matter, ORS 677.095 is not a statute that creates liability. We have explained that the statute "essentially codified the common-law standard" that this court's cases had used in negligence claims against physicians to explain that reasonable care depends on the circumstances. *Trees*, 354 Or at 206; *see Carruthers v. Phillips*, 169 Or 636, 648, 131 P2d 193 (1942) (explaining that "in truth the duty of care imposed upon physicians and surgeons is only a special application of the general law of negligence requiring due care under the circumstances" and that, "[a]mong the circumstances are the skill and training of the physician, the inherent difficulties of operative treatment, the impossibility of certainty in diagnosis and cure, and the frequent necessity for the exercise of professional judgment, together with the advanced condition of the medical science in the community").

More significantly, neither the statute nor a relationship is the source of liability in this case, because the circumstances on which plaintiff bases the claim of negligence involve conduct that allegedly created an unreasonable and foreseeable risk of the type of harm that actually befell Stone. Under those circumstances, as described above, the source of liability is the common-law principle that every person generally is liable to every other person for physical harm caused by conduct that "unreasonably created a foreseeable risk" of the kind of harm that actually occurred. *Fazzolari*, 303 Or at 17; *see also Towe*, 357 Or at 86 (emphasizing that, generally, "everyone owes each other the duty to

act reasonably in light of foreseeable risks of harm"). And a codified standard of care operates *within* the framework of a claim for ordinary negligence liability to define or inform the factfinder's determination of whether the defendant acted unreasonably with respect to a foreseeable risk of harm. *See Deckard v. Bunch*, 358 Or 754, 761 n 6, 370 P3d 478 (2016) (explaining that, "[w]hen a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances," the statute or rule controls whether the person was negligent). Thus, in addition to the special obligations that defendants owed to Witt, defendants were obligated to use the skill of an ordinary and reasonably prudent medical professional to avoid unreasonably creating foreseeable risks of physical harm to nonpatients, including Stone.

This court's opinions in other contexts illustrate the role that a special standard of care does—and does not—play in an ordinary negligence claim. For example in *Bellikka v. Green*, 306 Or 630, 762 P2d 997 (1988), the plaintiff brought a negligence action against a property owner for injuries that she had suffered as a result of falling into a concealed hole while visiting the defendant's rental property. *Id.* at 632. The plaintiff invoked provisions of the Oregon Residential Landlord and Tenant Act, which specifies the obligations of landlords and tenants, to support a claim that the landlord was negligent for failing to repair a condition that presented an unreasonable risk of harm for foreseeable persons such as the plaintiff. *Id.* at 649-50. The trial court had dismissed the complaint for failure to state a claim, but this court reversed.

This court described the complaint as alleging that, in not filling the hole, the defendant had "acted unreasonably in light of a foreseeable risk" and held that those factual allegations were sufficient to state a claim for negligence liability. *Id.* at 649. In addition, although the plaintiff was not a party to the landlord-tenant relationship, this court emphasized that the Residential Landlord and Tenant Act "will have an influence on actions between landlords and third persons injured on the rented or leased premises." *Id.* at 650. The opinion explains that there are multiple ways

in which a party "may be able to use a statute to meet or support one of the elements of his or her claim or defense in an ordinary negligence action," including "to establish the proper standard of care, * * * to show that the defendant met or failed to meet this standard," to "indicate standards of care that the defendant should have met," or "to show that a defendant should have considered the risk to a particular group of people which includes the plaintiff." *Id.* at 650-51.

The statute and rule at issue here define the proper standard of care for medical professionals. And, as in *Bellikka*, neither the existence of a statute or rule codifying the standard of care for medical professionals, nor the existence of a special relationship to which the injured person was an outsider, prevent that injured person from stating a claim in negligence for physical harm that the medical professional caused by unreasonably creating a foreseeable risk of harm. In contending otherwise, defendants primarily rely on this court's statement in *Mead* that "a physician-patient relationship is a necessary predicate to stating a medical malpractice claim," 352 Or at 276, and on our discussion in *Tomlinson* about the considerations that permitted the parents to state a claim in negligence for their emotional distress notwithstanding the absence of such a relationship. Neither case suggests the limitation on liability that defendants propose.

The statement in *Mead* must be understood in the context of the type of negligence liability at issue—liability for harm that the defendant merely failed to prevent. In *Mead*, the defendant was an on-call neurosurgeon who had been contacted by the plaintiff's treating doctor for advice about whether a patient experiencing back pain needed to be examined by a neurosurgeon. 352 Or at 269-70. The defendant did not "do or say anything to become involved in plaintiff's treatment" at that time. *Id*. at 270. But it turned out that the plaintiff had a herniated disk that required surgery, and—she alleged—the delay resulting from the defendant's failure to act had left her with substantial nerve damage. She brought a negligence claim against the defendant alleging that his failure to act when initially contacted had caused her nerve damage. *Id*. at 271. And she "acknowledged" that the defendant could be liable in negligence for

his failure to act only if he had entered into a physician-patient relationship with the plaintiff by the time of that omission. *Id*.

In other words, the parties in *Mead* understood the general rule that a plaintiff seeking to hold a defendant liable for harm that the defendant merely failed to protect against must allege (and prove) circumstances that support that type of special negligence liability. *See Tomlinson*, 362 Or at 442-43 (explaining general rule). The parties, and this court, therefore started the analysis with the question of whether the circumstances supported special negligence liability. And because a physician-patient relationship supports that type of special negligence liability, the entire focus of this court's discussion in *Mead* was on the evidence of and instructions regarding whether the defendant had established a physician-patient relationship with the plaintiff. *See* 352 Or at 285-86 (explaining that, unless jury found on remand that the defendant had formed at least an implied physician-patient relationship, the defendant could not be liable for harm that the defendant merely failed to prevent). Thus, our reference in *Mead* to a physician-patient relationship being "a necessary predicate to stating a medical malpractice claim," *id.* at 276, should be understood as referring to the type of claim that we had addressed as long ago as *Moulton*—a claim for liability in negligence against a physician that is premised on the obligation "to take affirmative steps to protect [the plaintiff] from a risk of harm that defendants did not create," which arises only in the context of a special relationship with the physician. *See Tomlinson*, 362 Or at 442-43 (describing why the plaintiffs' allegations required a special relationship); *Moulton*, 150 Or at 546 (liability in negligence "for a failure, due to want of the requisite skill or care, to diagnose"). In the absence of a special relationship with the plaintiff, the defendant in *Mead* was comparable to the classic bystander who merely fails to rescue a person who already is at risk, which is one of the "traditionally excluded categories of quite predictable injuries and claimants." *Fazzolari*, 303 Or at 7.

Our decision in *Tomlinson*, similarly, addressed whether the defendants had a professional relationship with

the injured parties sufficient to justify liability for harm beyond what ordinary negligence liability would reach. The parents in *Tomlinson* gave birth to a child, M, who suffered from a developmental disability that M's physicians failed to diagnose as a genetic disorder. 362 Or at 435. The parents then had a second child, T, who suffered from the same genetic disorder. The parents and T both brought negligence claims against M's physicians for negligently failing to diagnose M's disorder.[10] Although neither the parents nor T were patients of the physicians, they alleged that, if the physicians had timely diagnosed the disability in M, then the parents would have chosen not to have a second child. And if the parents would not have had a second child, then the parents would have avoided the burdens of raising another child with a disability, and T would have avoided the burdens of having to live with the disability. *Id.* at 435-36. As noted above, the trial court dismissed the parents' claim for lack of a physician-patient relationship, but this court reversed.

At the outset, the court emphasized in *Tomlinson* that liability could not be based on the ordinary elements of a negligence claim, for two reasons: (1) " the parents allege[d] only economic and emotional injuries," and (2) "the parents allege[d] that their injuries resulted from defendants' failure to take affirmative steps to protect them from a risk of harm that defendants did not create"—namely, the risk that the parents' genes would cause a future child to be born with the same disability. 362 Or at 442-43. The court explained that, "without some justification for providing legal protection, a person is not generally required to affirmatively protect the economic and emotional interests of others." *Id.* at 443. As a result, to state a claim, the plaintiffs in *Tomlinson* were required to plead facts establishing some kind of special circumstance or relationship. And because the parents were not patients of the allegedly negligent physicians, our inquiry focused on whether their relationship to the defendants, nevertheless, was capable of supporting liability for the harm caused by the defendants'

[10] The genetic disorder was Duchenne muscular dystrophy (DMD). *Id.* According to the complaint in *Tomlinson*, "DMD is an inheritable genetic disorder with severe and progressively debilitating symptoms, including muscle weakness and wasting, loss of the ability to walk (usually by age 12), progressive paralysis, and premature death." *Id.*

failure to affirmatively protect the parents' purely economic and emotional injuries. *Id*. at 445-46. It was in the context of resolving that policy question that this court set out factors that supported a conclusion that the parents had a relationship with the defendants sufficient to impose liability for failing to protect the parents' emotional and economic interests. *Id*. at 446-50.

Defendants argue that the factors justifying liability in *Tomlinson* are absent in a case like this, but that argument misses the point. We emphasized in *Tomlinson* that the discussion of factors supporting the parents' claim for emotional harm from risks that the defendants did not create should not be mistaken for an "attempt to identify all possible factors that could be relevant in considering whether to recognize such a claim." 362 Or at 446. More significantly, however, this is not such a claim. Plaintiff does not need us to recognize a new category of special negligence liability in order for the claim to proceed, because the complaint alleges a claim for ordinary negligence liability. And he does not need to establish a special circumstance or relationship to support liability, because no particular relationship is necessary to establish ordinary negligence liability. Rather, when asserting an "ordinary negligence claim," a plaintiff must plead facts to "establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan*, 364 Or at 643. As we explain below, plaintiff has pleaded facts sufficient to state a claim for ordinary negligence liability. Thus—unlike the plaintiffs in either *Mead* or *Tomlinson*—it is irrelevant that plaintiff has not plead a special relationship between defendants and Stone, because the complaint states a claim for ordinary negligence liability and does not depend on the existence of a particular relationship.

C.  *Plaintiff's Allegations Plead an Ordinary Claim for Negligence.*

As we have emphasized throughout, even in the absence of a special circumstance or relationship, a complaint states a claim for liability in negligence when it

alleges facts sufficient to permit a finding that the defendant's conduct "'unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff,'" and that the defendant's conduct actually caused physical harm to the plaintiff. *Scott*, 370 Or at 12 (quoting *Fazzolari*, 303 Or at 17); *see also Chapman*, 358 Or at 205 (describing requirements for an ordinary negligence claim and explaining that a "plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff"). As described above, the task for a court at this stage is simply "to determine whether upon the facts alleged *** no reasonable factfinder could decide" the claim for ordinary negligence liability in favor of plaintiff. *Fazzolari*, 303 Or at 17. Although defendants do not specifically dispute that plaintiff has alleged facts from which a jury could find that defendants' conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff," we take this opportunity to explain why the facts alleged—if proven—would establish that defendants are liable in ordinary negligence for the physical harm to Stone.

We have explained that, in some cases, the standard for reasonableness is defined with reference to other sources of law that specify the degree of care that a particular defendant must use under the circumstances. *Deckard*, 358 Or at 761 n 6. Here, the applicable standards of care are codified, as explained above. Medical providers act reasonably when they "use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community," and the standard of reasonableness for pharmacists is equivalent. ORS 677.095(1); OAR 855-115-0105(1).

Plaintiff's complaint alleges that defendants engaged in unreasonable conduct in their treatment of Witt by prescribing drugs that did not appropriately treat Witt's medical conditions; by prescribing and dispensing addictive drugs despite knowing, or having reason to know, that Witt

was abusing the drugs; and by failing to adequately warn Witt that taking the drugs presented a risk of impaired driving. The complaint also alleges that defendants knew or should have known that Witt's long-term use of the particular prescribed drugs could likely lead to dependency and misuse, including drug seeking behaviors, knew or should have known that Witt was at significant risk of developing a substance use disorder or already had developed a use disorder, and knew or should have known that Witt was likely to misuse the drugs and drive a vehicle while impaired, foreseeably putting at risk other drivers or bicyclists using the road at the same time.

Whether the defendants acted unreasonably under the applicable standards of care is a fact that plaintiff ultimately must prove with expert testimony. *See Trees*, 354 Or at 207 (explaining rule). But for purposes of the motion to dismiss, the allegations in the complaint—if proven—would permit a reasonable jury to find that the conduct of each defendant in their prescribing and dispensing of drugs to Witt unreasonably created a foreseeable risk of the kind of harm that befell Stone and that physical harm to Stone actually resulted from the conduct.[11]

Those allegations state an ordinary negligence claim even if, as alleged here, the foreseeable harm to the plaintiff is harm at the hands of a third person. As we explained in *Fazzolari*, "[a]nother person's crime was once thought to lie beyond a defendant's responsibility * * *, but more recent decisions [had] dealt with the behavior of others, lawful or otherwise, as part of the general analysis of foreseeable risks." 303 Or at 20. Among the cases that *Fazzolari* cited as examples of that approach is *Campbell v. Carpenter*, in which this court explained that "a tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile." 279

---

[11] We do not purport to decide that every specification of negligence in the complaint satisfies the standard that we have described for ordinary negligence liability, because defendants' arguments challenge only the sufficiency of the complaint, in its entirety, to state a claim.

Or 237, 243-44, 566 P2d 893 (1977);[12] *see also Sloan*, 364 Or at 646 (explaining that, "even before *Fazzolari*, a medical professional whose conduct fell short of the standard of care could be liable for injuries caused by another's subsequent conduct if the subsequent conduct and injuries were reasonably foreseeable consequences of the medical professional's failure").

In other words, our cases both pre- and post-*Fazzolari* make it clear that a person can create a risk of harm without being the sole or original source of the risk and that multiple actors can combine to cause harm. *See Deckard*, 358 Or at 758-59 (emphasizing that serving alcohol to a visibly intoxicated guest who then drives a car and injures a third person states a common-law negligence claim for liability to the third person if that risk was reasonably foreseeable); *see also Haas v. Estate of Mark Steven Carter*, 370 Or 742, 753, 525 P3d 451 (2023) (emphasizing rule that "there may be many causes of a plaintiff's harm and that, when multiple tortfeasors contribute to that harm, all may be held liable for it"). As in *Campbell* and *Deckard*, the complaint states a common-law negligence claim for liability against defendants, because it alleges that it was reasonably foreseeable that defendants' conduct in over-prescribing and dispensing of addictive drugs to Witt would lead to Witt driving a vehicle while impaired and causing harm to other drivers or bicyclists using the road at the same time.

---

[12] Although this court has not yet addressed liability for another's impaired driving in the context of a medical professional whose prescribing or dispensing of drugs to a patient falls below the standard of care, decisions from other courts places that context squarely within our Oregon framework of ordinary negligence. *See, e.g.*, 2 *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 41 comment h (2012) (explaining that the general duty to avoid unreasonably creating risks of physical harm covers cases in which "care provided to a patient may create risks to others," such as "prescribing an inappropriate medication that impairs the patient"); *Medina v. Hochberg*, 465 Mass 102, 109, 987 NE2d 1206, 1212 (2013) ("In prescribing the medication, a physician has created the possibility that the patient might decide to operate a motor vehicle while taking it, experience a known side effect, and cause bodily injury to a nonpatient. Thus, a physician's decision to prescribe medication to his patient creates or increases the risk of harm to the general public."); *McKenzie v. Hawai'i Permanente Med. Grp., Inc.*, 98 Hawai'i 296, 300, 47 P3d 1209, 1213 (2002) ("[T]he 'special relationship' arguments put forth by the parties are inapplicable to this case because medical malpractice involving the negligent prescription of medication is 'misfeasance' that is not analogous to the 'nonfeasance' in failing to act as a 'Good Samaritan' or failing to take affirmative 'action' as the term is used by Restatement (Second) § 314.").

D.  *The Medical Context Does Not Limit Liability in These Circumstances*

Defendants, nevertheless, urge this court to hold that Oregon negligence law does not permit courts to impose liability on medical professionals who unreasonably create a foreseeable risk of harm through their prescribing or dispensing prescription drugs unless the person harmed by that conduct is the patient or has the kind of special relationship to the professional that this court described in *Tomlinson*. Defendants raise a number of concerns to justify the bar to liability that they propose, but none is ultimately persuasive. First, defendants maintain that decisions related to treatment of a patient in need of prescription drugs are already very complicated, potentially requiring the medical professional to balance many factors. Requiring physicians and pharmacists to consider the risks of harm to nonpatients, they contend, would add another complicating factor that could lead to worse medical outcomes for a patient. Defendants also contend that failing to create an exception to liability in this case might impair the relationship between the patient and the medical professional. And, finally, defendants contend that it could be unfair to impose liability for injuries that are ultimately caused by patients, whom the medical professionals do not control. Defendants urge that some courts in other states have adopted variations on the liability limitation that they propose.

We are not persuaded, however, that the cases from other jurisdictions on which defendants rely would support dismissal and, more significantly, we are not persuaded that Oregon should adopt the policy-based liability limits that other states have adopted. *See, e.g.*, *Burroughs v. Magee*, 118 SW3d 323, 331-34 (Tenn 2003) (physician could be liable in negligence to nonpatient for failure warn patient about side effects of medication but would not be liable for the decision of which drugs to prescribe); *see also McKenzie v. Hawai'i Permanente Med. Grp., Inc.*, 98 Hawai'i 296, 303, 47 P3d 1209, 1216 (2002) (describing similar limit on liability, although noting that that case did not involve the prescription of controlled substances, which "are well-known—even to the lay observer—to be commonly abused and, when

abused, to cause impairment in many respects, including the impairment of driving ability").

Although we acknowledge the complexity of the decisions related to treating patients in need of potentially addictive prescription medications, Oregon's specified standards of care for both physicians and pharmacists ensure that liability can arise only if their medical care was inconsistent with that used by "careful" providers "in the same or similar circumstances." ORS 677.095(1); OAR 855-115-0105(1). The difficulty of balancing competing factors in determining appropriate care for a patient is already part of that standard.[13] A medical professional breaches that standard only if they engage in conduct that is, according to professional standards, neither ordinary nor reasonably prudent. Similarly, although defendants and *amici* are concerned that medical professionals not place "the interests of others in competition with that of the patient in the exam room," the statutory standard of care ensures that the ultimate test is merely the reasonable medical professional in the same or similar community. Moreover, when the risk of harm is the risk that the patient will drive while impaired and cause a collision, there is no basis for suggesting that the interests of nonpatients might be in conflict with the interests of the patient—who is equally placed at risk by driving while impaired.[14]

Finally, defendants' concerns that it would be unfair to impose liability for the conduct of patients that they cannot control are addressed already in Oregon by the limitation that foreseeability places on liability for ordinary negligence. As we explained in *Fazzolari*, "[a]nother person's crime was once thought to lie beyond a defendant's responsibility on grounds of proximate cause, but more recent decisions have dealt with

---

[13] We note that Oregon's medical licensing statutes specifically address the prescribing of controlled substances by medical professionals. ORS 677.470 - 677.480.

[14] Although we have emphasized that the allegations in this case do not raise the concern about conflicting interests that defendant raises, we note that the *Restatement* cautions against an approach to negligence that would allow physicians to completely ignore the risk to third parties, noting that, if two treatments are "equally effective and of equal risk to the patient," "but one poses serious risks to third parties and the other is entirely benign, the physician who prescribes the former should be held liable to a third party harmed" by the treatment. 1 *Restatement* § 7 comment e.

the behavior of others, lawful or otherwise, as part of the general analysis of foreseeable risks." 303 Or at 20 (internal quotation marks omitted)).[15] A jury may well find that the risk of a patient driving while impaired is a risk that an ordinary and reasonably prudent physician or pharmacist would have foreseen and taken account of in determining whether to prescribe or dispense the drugs or whether to warn about side effects. Under Oregon negligence law, third-party criminal conduct is not inherently a bar to liability if the defendant's actions unreasonably and foreseeably contributed to that risk. *See Deckard*, 358 Or at 758-59 (emphasizing that serving alcohol to a visibly intoxicated guest who then drives a car and injures a third person states a common-law negligence claim if that harm was reasonably foreseeable). Thus, if the jury finds in favor of the plaintiff on those questions, then injuries resulting from the risk of impaired driving are within the scope of liability for that negligence. Liability in cases such as in *Deckard* and the case before us is based on the defendants' own conduct that unreasonably contributed to the foreseeable risk of harm. We are not persuaded that Oregon common law should grant medical professionals a special dispensation that limits liability for harm caused by foreseeable risks of physical harm that the professional *unreasonably* creates in the course of treating a patient.

## III.  CONCLUSION

For the reasons discussed above, we hold that the facts alleged in plaintiff's complaint, *if proven*, provide a basis for liability in negligence based on the obligation that every person owes to every other to avoid unreasonably creating a foreseeable risk of physical harm. And we decline to adopt a rule that would limit liability for medical professionals under those circumstances that would expose every

---

[15] Defendants suggest that there can be no liability on the facts of this case, because "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it," citing our statement in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 511-12, 853 P2d 798 (1993). As we have explained, however, this court in *Buchler* rejected the plaintiff's claim for harm caused by intervening criminal conduct by a prison escapee, because "the harm that the plaintiffs suffered was not a reasonably foreseeable consequence of the risk created by" the defendants. *Piazza*, 360 Or at 76; *see Buchler*, 316 Or at 516 (concluding that "it was not reasonably foreseeable that the escapee posed a risk of harm to persons in plaintiffs' position").

other Oregonian to liability. Accordingly, we conclude that the trial court erred in concluding that plaintiff's complaint failed to state a claim for relief.

The decision of the Court of Appeals is affirmed. The limited judgments of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** concurring.

I join in the court's opinion. I write separately to observe that this case raises important policy questions that are not fully answered by today's decision.

The policy concerns expressed by defendants and their *amici*, the Oregon Medical Association (OMA), the American Medical Association (AMA), and the National Association of Chain Drug Stores (NACDS), reflect the fear that physicians and pharmacists who comply with the applicable standard of care with respect to their patients may nevertheless be held liable to third parties who are injured by the actions of those patients. *Amici* OMA and AMA argue, for example, that "[a] physician should never be liable when the standard of care has been met, and a scenario where a physician provides appropriate care to a patient and is nonetheless liable to a third party invites considerations into the exam room that will irreparably compromise patient care, trust, and confidence." They further argue that

> "the pivotal question in a professional negligence action involving the physician-patient relationship must be whether the physician has complied with the standard of care as set forth in ORS 677.095(1). If they have, there can be no claim against the provider stemming from that care, regardless of whether any harm that eventually occurred was a foreseeable result of the physician's care."

It is important to be clear that nothing in today's decision is inconsistent with those statements. Simply put, under today's decision, there can be no liability in negligence for a physician or pharmacist who is found to have *complied* with the applicable standard of care, whether that claim is brought by a patient or by a nonpatient third party. The court's opinion holds only that a physician or pharmacist

who *acts negligently* under the applicable standard of care may be liable to anyone who suffers a reasonably foreseeable physical injury as a result—as is true generally for people who act negligently. 374 Or at 527. The only atypical feature of this case is that, because the conduct alleged to have been negligent occurred in the course of the physician-patient and pharmacist-patient relationships, the reasonableness of the defendants' conduct must be judged according to the particular standards that apply in the context of those relationships. But, if those standards of care are found to have been followed, there can be no liability—to a patient or to anyone else. It is thus not the case, as *amici* fear, that a physician or pharmacist who acts consistently with the operative standards of care in treating a patient or dispensing medication can nevertheless be found by a jury to have somehow "unreasonably" created a risk to others.

With that said, defendants and *amici* are right to highlight certain public policy implications of recognizing liability to third-party nonpatients. Defendants and *amici* urge that such a rule threatens the integrity of the physician-patient relationship. They highlight the problem of divided loyalties, *i.e.*, "plac[ing] the interests of others in competition with that of the patient in the exam room." The concern that defendants and *amici* raise is important, in my view, and it is not fully answered by the assurance that liability can be imposed only where the standard of care was actually breached. That is so because of the potential chilling effect. Tort liability is imposed retrospectively, but medical providers treat patients prospectively; although a competent and diligent doctor may view a particular course of action as consistent with the standard of care, there are no guarantees that a jury will later agree. Moreover, the standard of care may sometimes allow a physician to recommend one or more among several treatment options. Prescribing and not prescribing a drug might both be consistent with the standard of care. I understand defendants and *amici* to suggest that, in such cases, fears regarding potential liability to nonpatients might influence, to an undesirable degree, a physician's assessment of whether to recommend the drug to the patient.

The "divided loyalties" problem is therefore one that deserves serious consideration. In part it presents a question of cost-benefit analysis; reasonable people may disagree as to whether the societal benefits of allowing tort remedies for nonpatients outweigh the costs that potential liability to third parties may impose on the relationships between doctors and pharmacists and their patients. It is also a complex question of public policy that involves normative considerations as well as empirical ones, such as how physicians and pharmacists are likely to behave in fact under different liability regimes. The nature of those questions makes them better suited to ultimate resolution by the other branches of government than by the judiciary. For those reasons, I agree with today's decision, although it need not be the last word.

**BUSHONG, J.,** concurring.

The majority opinion concludes that the trial court erred in dismissing plaintiff's negligence claims against defendant medical providers. I agree with that conclusion and with much of the majority opinion's reasoning. I write separately because the majority opinion states, erroneously in my view, that a plaintiff must allege that the defendant's conduct *created* a foreseeable risk of the type of harm that befell the plaintiff to state an ordinary negligence claim.[1] As I will explain, to state a claim for ordinary negligence, a plaintiff need only allege a risk of harm that *is reasonably foreseeable* to the defendant, not that the defendant engaged in conduct that *created* the risk. In describing the elements of a negligence claim, the majority opinion conflates two distinct concepts—foreseeability of the risk and creation of a duty—contrary to our prior negligence cases, thereby creating unnecessary uncertainty and confusion in our tort law.[2]

---

[1] The majority opinion states that a claim for liability based on ordinary negligence requires the plaintiff to "plead and prove facts to permit a finding that defendant's conduct unreasonably *created* a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." 374 Or at 530 (emphasis added). I do not dispute that many of our prior cases have quoted a statement to that effect from *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1986), but, as I will explain, I do not agree that pleading and proving facts that would permit a finding that the defendant's conduct created the risk is required to establish liability for negligence.

[2] A Court of Appeals judge recently described the "disarray" in our common-law-negligence cases caused by "dozens of cases lacking consistency[,]" concluding that "something has gone awry in Oregon tort law[.]" *Derby v. Columbia County*,

The majority opinion goes astray when it uses an oft-quoted sentence in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1986), to define the elements of an ordinary negligence claim. That sentence reads:

> "In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct *unreasonably created a foreseeable risk* to a protected interest of the kind of harm that befell the plaintiff."

(Emphasis added).

That statement, coming near the end of the *Fazzolari* opinion, did not define the elements of a common-law negligence claim. Rather, it summed up "in short" the analysis that led the court to reject the application of the traditional duty/breach approach to limit a defendant's liability. *See Scott v. Kesselring*, 370 Or 1, 10, 513 P3d 581 (2022) (statement describes "the bounds of a defendant's liability" for ordinary negligence).[3] A careful examination of that analysis and how it was applied in *Fazzolari* and other cases reveals that engaging in conduct that unreasonably *created* a foreseeable risk of harm is not an element of a common-law negligence claim.

*Fazzolari* began by describing the "problem" that had been identified in *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 607, 469 P2d 783 (1970), regarding "the relation of foreseeability and duty as elements of liability in negligence law." *Fazzolari*, 303 Or at 3. Foreseeability, the court explained, "is a judgment about a course of events, a factual judgment that one often makes outside any legal context."

---

336 Or App 379, 399-400, 408, 561 P3d 629 (2024), *rev allowed*, 373 Or 712 (2025) (Kamins, J., dissenting). As I will explain, instead of providing needed clarity, today's majority opinion unfortunately adds to the confusion and disarray.

[3] This court's opinion in *Scott* attempted to "weav[e] together the requirements of an ordinary negligence claim[]" from prior cases, stating as part of that effort that a defendant's conduct must have unreasonably "created a foreseeable risk" of harm. 370 Or at 12. But the issue that was decided in *Scott* was whether the trial court had erred in declining to exclude evidence at trial that the defendant had been using her cellphone when she rear-ended the plaintiff's vehicle. The elements of a common-law negligence claim were not at issue in *Scott*. Thus, the court's attempt to "weave together" those elements in that case is *dicta*.

*Id.* at 4. If disputed, foreseeability "is decided as an issue of fact." *Id.*

"Duty" is different. The court noted that the leading treatises on tort law "reach the subject of 'duty' only as a limiting concept, invoked to confine the reach of responsibility for harm caused by negligent conduct[.]" *Id.* at 9 (citing Prosser & Keeton, *The Law of Torts* (5th ed 1984), and Harper, James & Gray, *The Law of Torts* (2d ed 1986)). "'[D]uty' by definition appears as a legal issue and, if disputed, is decided by the court." *Id.* at 4. The court then summarized how Oregon negligence law had developed over time, noting that the *Stewart* opinion "made no reference to 'duty.'" *Id.* at 13.

The *Fazzolari* court explained that the "main purpose" of the *Stewart* opinion, "was to separate foreseeability (what prospectively *might* happen) from causation (what retrospectively *did* happen) as a limit on the scope of liability." *Id.* (emphasis added). *Stewart* "made foreseeable risk the test both of negligent conduct and of liability for its consequences *without phrasing the test in terms either of causation or of duty.*" *Id.* at 14 (emphasis added).

*Fazzolari*'s application of *Stewart* means that the "foreseeable risk" element of a negligence claim should not be phrased in terms of a defendant *causing*—or, for that matter, *creating*—a foreseeable risk of harm. Rather, *causation* is "what retrospectively did happen." *Fazzolari*, 303 Or at 13.

Causation is what the jury typically assesses in a negligence case in determining whether the defendant's negligent act or omission was a cause of the harm that the plaintiff suffered. A special status, relationship, or standard of care can create, define, or limit a defendant's *duty*, as stated in *Fazzolari*, thereby making that duty different from the ordinary duty to exercise reasonable care to avoid causing the kind of physical harm that was *reasonably foreseeable*. But Oregon negligence law does not require that a defendant's conduct *create* a foreseeable risk of harm.

Under the majority opinion's approach, to state a claim for ordinary negligence, the plaintiff must allege

facts that, if proven, would permit a jury to make three distinct findings about the nature of the risk: (1) it must be a risk of the type of harm that ultimately befell the plaintiff; (2) it must have been reasonably foreseeable to the defendant; and (3) it must have been created by the defendant's conduct. But our case law only requires the jury to make the first two findings. By conflating two distinct concepts—the foreseeability of the risk and the creation of a duty—the majority adds a new element.

The conflation of those concepts is reflected by the majority opinion's "reiterat[ion]" that, "*absent a special circumstance or relationship*, a plaintiff generally states a viable theory of negligence when a plaintiff alleges facts to permit a finding that *the defendant unreasonably created a foreseeable risk* of physical harm." 374 Or at 538 (emphasis added. Under our cases, a "special circumstance or relationship" can create—or limit—a *duty*. The majority opinion does not explain why the *absence* of a circumstance or relationship that could otherwise create a *duty* means that the plaintiff, to state an ordinary negligence claim, must plead and prove that the defendant unreasonably *created* a *risk*.

*Fazzolari* did not treat "creation of the risk" as an element of the negligence claim that the plaintiff had asserted in that case. The plaintiff in *Fazzolari* sued a school district for negligence after an assailant raped her on the grounds of the high school that she attended. The *risk* that the plaintiff might be assaulted was not *created* by the school district's conduct; it existed regardless of the school district's conduct. The reason the school district could be liable for the assault was the fact that it was reasonably *foreseeable* to the school district that a student might be assaulted on school grounds.

As the court explained, *Stewart* had "made clear that the concept of foreseeability refers to the generalized risks of the type of incidents and injuries that occurred rather than the predictability of the actual sequence of events." *Id.* at 21. The risk of an assault was foreseeable in *Fazzolari* because "there was evidence that a woman reportedly had been sexually assaulted on the school grounds 15 days before the attack on [the] plaintiff, and [the] plaintiff

attempted to introduce evidence of various other kinds of attacks." *Id.*

Thus, under *Fazzolari*, a plaintiff seeking to recover damages for physical harm caused by a defendant's negligence is only required to plead facts which, if proved, would allow a trier of fact to conclude that (1) the defendant engaged in negligent conduct—that is, the defendant either failed to use reasonable care when they did something that a reasonable person would not do, or failed to do something that a reasonable person would do under similar circumstances; (2) the defendant's negligent conduct was a cause of the physical harm that the plaintiff had suffered; and (3) that type of harm was reasonably foreseeable to the defendant. Whether that type of harm was reasonably foreseeable depends on whether the facts established that the defendant knew or reasonably should have known of the risk at the time of the defendant's negligent conduct. We said as much in other cases that applied *Fazzolari*.[4]

For example, in *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 83 P3d 322 (2004), we stated that, after *Fazzolari*, we have "discussed a defendant's liability for harm that the defendant's conduct causes in terms of the concept of 'reasonable foreseeability,' rather than the more traditional 'duty of care.'" *Id.* at 340. We indicated that the elements of a common-law negligence claim include "a foreseeable risk of harm to the plaintiff *and conduct by the defendant that is unreasonable in light of that risk*." *Id.* (emphasis added). We further explained that a special status, relationship, or standard of conduct may "*create \* \* \* the defendant's duty* to the plaintiff." *Id.* at 341 (emphasis added)

---

[4] The majority opinion points out that *Fazzolari* described harm from "a bystander's failure to rescue" as one of the "traditionally excluded categories of quite predictable injuries and claimants." 374 Or at 535; *see also Cramer v. Mengerhausen*, 275 Or 223, 227, 550 P2d 740 (1976) (stating that "[t]here is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty"). Describing the elements of an ordinary negligence claim in terms of the foreseeability—not creation—of the risk does not mean that a bystander would be liable for failing to rescue someone even if it was foreseeable that harm would occur if the bystander failed to act. That is because, under *Fazzolari* and *Cramer*, the bystander's status as a bystander—and the absence of any special relationship between the bystander and the injured person—meant that the bystander had "no *duty* to aid one in peril[.]" *Cramer*, 275 Or at 227 (emphasis added).

(internal quotation marks omitted). But we did *not* say that liability for negligence depends on whether the defendant's conduct "created" a foreseeable risk of harm. Subsequent cases have confirmed that "creating" a risk is not an element of a common-law negligence claim, nor is "creating" a risk required to make it reasonably foreseeable.

In *Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 347 P3d 766 (2015), we explained that, under *Fazzolari*, the traditional duty-breach analysis in an ordinary negligence claim "is supplanted by the question of whether the defendant's conduct resulted in a *foreseeable and unreasonable risk of harm* of the kind that the plaintiff suffered." (Emphasis added.) So a plaintiff asserting an ordinary negligence claim does not need to prove that the defendant owed the plaintiff a duty, because generally, "everyone owes each other a duty to act reasonably in light of foreseeable risks of harm." *Id.* We then explained that "the duty element is not always subsumed in a foreseeability analysis." *Id.* Instead, "the nature and scope of *the duty* owed by the defendant to the plaintiff can be *created*, defined, or limited" by the relationship between or status of the parties. *Id.* (emphasis added).

We went on to explain that foreseeability should not be confused with causation, because "[c]onceptually, foreseeability and causation are *separate* elements." *Id.* at 87 (emphasis added). Foreseeability "is a prediction of the risk that an act or omission will result in a particular kind of harm—it turns on 'what *prospectively might* happen.'" *Id.* (quoting *Fazzolari*, 303 Or at 13 (emphasis in original.)). Causation "is an assessment of whether a particular act or omission *in fact* resulted in the particular harm that a plaintiff suffered—it turns on 'what *retrospectively did* happen.'" *Id.* (first emphasis added; second emphasis in original). Thus, a foreseeable risk of harm sufficient to support a common-law negligence claim depends upon an assessment of whether the risk of *what might happen*—if the defendant engages in negligent conduct—is reasonably foreseeable, not on whether the defendant's negligent conduct "created" that risk.

The majority opinion suggests, erroneously in my view, that this court previously applied a "creation of the risk"

principle in two cases, *Mead v. Legacy Health System*, 352 Or 267, 283 P3d 904 (2012), and *Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 412 P3d 133 (2018). *See* 374 Or at 541 (stating that the plaintiff's failure to plead and prove that the defendant's negligent conduct created the risk "is precisely why" we affirmed the dismissal of the claim in *Mead*, and why the claim in *Tomlinson* "would have been dismissed" except for the relationship between the defendants and the plaintiffs). But the holdings in those cases were both based on whether the defendant's status or relationship gave rise to a *duty*, not on whether the defendant had created the *risk*.

In *Mead*, the plaintiff sued an on-call neurosurgeon for malpractice, alleging that the defendant had negligently failed to timely diagnose, treat, and care for the plaintiff's back condition after an emergency room doctor had telephoned the defendant for advice. A jury returned a verdict in favor of the defendant, concluding that he "was not acting as [the] plaintiff's doctor and, as a result, *owed her no duty.*" 352 Or at 269 (emphasis added). We concluded, based on the trial court record, that "the jury could find that [the] defendant was not acting as her doctor[.]" *Id.* We noted that there was evidence at trial that the emergency room doctor had not asked the defendant to examine or treat the plaintiff, and that the symptoms that the emergency room doctor had described during the telephone call "depicted a person with a bad back," not a more serious condition. *Id.* at 282. We concluded that the jury could have inferred from that evidence "that those two conditions *defined the limits of the obligations that flowed from defendant's status* as the on-call neurosurgeon[.]" *Id.* (emphasis added). Thus, we affirmed the jury's verdict because the defendant's *status* as the on-call neurosurgeon limited his obligation to protect the plaintiff from harm. We did not affirm the verdict based on the plaintiff's failure to prove that the defendant's conduct had "created" the risk.

In *Tomlinson*, the plaintiffs—a child, T, who was born with a genetic disorder, and T's parents—alleged that the defendant medical providers had negligently "failed to timely diagnose [the parents' older son's] genetic disorder,

and failed to inform the parents of that disorder[,]" causing them to suffer economic and noneconomic damages when T was born with the same genetic disorder. 362 Or at 434. The trial court dismissed the complaint, reasoning that "neither the parents nor T were patients of defendants and, therefore, * * * the defendants *owed no obligation of professional care* toward them." *Id.* (emphasis added). We reversed as to the parents' claim, explaining that we had previously recognized in appropriate circumstances that, "in carrying out a professional obligation to a client, the professional may be required to protect the interests of a third party as well." *Id.* at 445. In those circumstances, "the professional's relationship with a client not only gives rise to an obligation to protect the interests of the client, but *it also can give rise to an obligation* to protect the interests of a third party." *Id.* (emphasis added). We thus concluded that the factual allegations in the parents' complaint, "are sufficient, if proved, to establish that * * * defendants had a limited *obligation* to protect the parents' interests[.]" *Id.* at 447. Thus, our holding in *Tomlinson* was based on the defendants' *obligation* or duty to protect the parents' interests, a duty that arose from the defendants' relationship with the parents of their patient; it had nothing to do with whether the defendants' conduct had *created the risk* that T would be born with a genetic disorder.[5]

Including the concept of "creating the risk" as an element of a negligence claim becomes even more problematic where, as here, the harm that befell the plaintiff resulted from the wrongful or criminal conduct of a third-party. That context highlights that the foreseeable risk element depends on whether the defendant *knew or should have known* of a risk of the type of harm that befell the plaintiff when the defendant engaged in negligent conduct, not on whether the

---

[5] We affirmed the dismissal of T's negligence claim on two related grounds. First, we stated that, absent "a principled way to determine the relative values of life and nonexistence under the circumstances alleged in this case, we cannot conclude that T had a legally protected interest in remaining in a state of nonexistence." 362 Or at 471. Second, we could not conclude "that defendants caused T to suffer injury to a legally protected interest." *Id.* Thus, we declined to "disregard the causation and injury requirements for T's negligence claim[.]" *Id.* We did not state that T's negligence claim was properly dismissed because he failed to allege facts that would permit a finding that the defendants had "created" the risk that he would be born with a genetic disorder.

defendant's negligent conduct *created* that risk. Two of our prior cases explain how this court—applying *Fazzolari*—has addressed the risk of harm resulting from a third-party's wrongful or criminal conduct. Because those cases are instructive, I will discuss them in some detail.

In *Chapman v. Mayfield*, 358 Or 196, 361 P3d 566 (2015), the plaintiff alleged that Mayfield, after being served alcohol at the defendant's bar when he was visibly intoxicated, walked down the street and unintentionally fired a gun through a doorway, causing injuries to the plaintiffs. The trial court granted summary judgment to the defendant on foreseeability grounds. This court affirmed, concluding that the plaintiffs' evidence "was not sufficient to permit a trier of fact to find that the harm that plaintiffs suffered was a reasonably foreseeable risk of defendant's conduct." *Id.* at 198. In reaching that conclusion, we carefully analyzed how the foreseeable risk element is established when a third party's wrongful or criminal conduct caused the plaintiff's injuries.

We began that analysis by examining foreseeability in general, stating that foreseeability "is considered separately from causation * * * and serves as a limit on the scope of liability." *Id.* at 206. That limit means that a person can be liable for ordinary negligence "only when the injury caused is one which could have been anticipated because there was a reasonable likelihood that it could happen." *Id.* (internal ellipses and quotation marks omitted). The proper approach, we explained, "views the defendant's conduct through the lens of the particular factual circumstances of the case—*with emphasis on what the defendant knew or should have known about the risk of harm* to a particular class of plaintiffs[.]" *Id.* at 208 (emphasis added). That approach, we concluded, "has been this court's practice in cases that address foreseeability as a limit on liability." *Id.*

We then explained how that analysis applied where the harm that the plaintiff suffered resulted from a third-party's criminal conduct. We began that explanation with *Fazzolari*, noting that the *Fazzolari* court had "appl[ied] the conception of foreseeability from *Stewart* to the circumstances before it," and stating that there was evidence in the

record in *Fazzolari* showing that the school district knew of a previous sexual assault on the school grounds shortly before the attack on the plaintiff. *Id.* at 209. That evidence was sufficient, we explained, to allow a trier of fact to "find that the type of harm that the plaintiff suffered was reasonably foreseeable to the district *in light of the known risk of harm.*" *Id.* (emphasis added). In other words, foreseeability in *Fazzolari* depended on that "known risk of harm," not on whether the district's conduct had somehow "created" a risk that the plaintiff might be assaulted by an assailant on school grounds.

The *Chapman* court then summarized the foreseeability analysis required by other prior cases, concluding that those cases required a plaintiff to allege "factual circumstances that, if proved, would permit a trier of fact to find that the defendant *knew or should have known* of an unreasonable risk of harm—including the risk of harm from intentional violence—to a foreseeable plaintiff." *Id.* at 215 (emphasis added). Thus, our established analysis focuses on what the defendant *knew or should have known* at the time of the defendant's negligent conduct, *not* on whether the defendant's conduct *created* a risk of harm. We applied that analysis in *Chapman*, concluding that the evidence that the plaintiff had submitted on summary judgment "did not include facts that would justify supplying an inference—based on general knowledge—that defendant should have known that serving alcohol to a visibly intoxicated Mayfield reasonably could be expected to result in his unintentional attack on plaintiffs at a different location." *Id.* at 222.

We again analyzed the foreseeable risk element of a common-law negligence claim in the context of harm resulting from a third-party's criminal conduct in *Piazza v. Kellim*, 360 Or 58, 377 P3d 492 (2016). In that case, an assailant shot and killed a foreign exchange student (Delgado) while she was standing in line on a public sidewalk waiting to enter "the Zone," a teenage nightclub. The personal representative of Delgado's estate brought negligence claims against the Zone's owners and the groups responsible for Delgado's care and supervision. The trial court dismissed the claims on foreseeability grounds, but this court reversed. We

explained that the dispositive question was whether plaintiff had alleged facts that, if proved, would permit a jury to determine "that reasonable persons in defendants' positions *would have foreseen a risk* to Delgado's safety 'of the kind of harm that befell' her." *Id.* at 73-74 (quoting *Fazzolari*, 303 Or at 17 (emphasis added)).

We then explained that, under *Chapman*, the foreseeability analysis "emphasized the centrality—in determining whether a triable issue has been established with respect to foreseeability—of the plaintiff's description of the injury-producing factual circumstances in the context of her theory of liability." *Id.* at 76. Where the plaintiff alleges physical harm resulting from the wrongful or criminal acts of a third party, "a trier of fact must be able to find from concrete facts that a reasonable person in the position of the defendant reasonably would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as the plaintiff." *Id.* at 81.

Applying that analysis, we noted that the plaintiff in *Piazza* had alleged "a repeated—if somewhat unevenly spaced—history of violent assaults, including gun violence, at and in the neighboring vicinity" of the Zone, and its owners "had in the past acknowledged the risks of harm posed by that history[.]" *Id.* at 83-84. We concluded that those allegations, if proved, would permit a trier of fact to determine that a reasonable person in the position of the Zone's owners "would have foreseen a risk of violent assault on the public sidewalk outside the nightclub, where underage patrons were queued up to enter." *Id.* at 84. Similarly, we explained that the plaintiff had alleged that Delgado's caregivers "*knew* that there had been a significant history of violent assault late at night at or near the Zone, they took Delgado to the Zone and left her there, and she was the victim of violent assault." *Id.* at 85 (emphasis added). That chain of events, we concluded, did not "compel[] the conclusion that Delgado's death was not reasonably foreseeable as a matter of law." *Id.* The risk was foreseeable to both the Zone and the caregivers because of what they knew, *not* because they created the risk.

In summary, under our prior cases, liability on a common-law negligence claim does not depend on alleging and proving that the defendant's conduct had *created* a risk of the type of harm that ultimately befell the plaintiff. The risk in *Chapman* that an overly intoxicated Mayfield might negligently discharge a firearm and injure someone was, at least in one sense, created by the defendant's conduct in serving Mayfield alcohol when he was visibly intoxicated, but that did not make the risk reasonably foreseeable.[6] Conversely, the risk that the plaintiff in *Fazzolari* might be assaulted was *not* created by the school district, but it nonetheless *was* reasonably foreseeable. The risk in *Piazza* that Delgado might be shot outside the Zone nightclub was not created by the Zone's owners or Delgado's caregivers, but that risk also was reasonably foreseeable. That foreseeable risk was sufficient to state a viable claim. The same is true here.[7]

Pleading that a defendant's conduct *created* the risk is not required because that is not an element of a common-law negligence claim in Oregon. Rather, it suffices to plead that the defendant's negligent conduct—including a failure to take actions that a reasonable person would take in similar circumstances—was a cause of the harm that

---

[6] The majority opinion cites to the 1 *Restatement (Third) of Torts: Liability for Physical and Emotional Harm*, section 7 comment o (2010), which states that an actor's conduct "creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct." 374 Or at 540. The defendant's conduct in *Chapman*—serving Mayfield alcohol when he was visibly intoxicated—undoubtedly resulted in a greater risk that he might negligently discharge a firearm and injure someone. Thus, under the *Restatement* test, defendant's conduct "created" that risk.

[7] Thus, I agree with the majority opinion that plaintiff pleaded sufficient facts to state a claim for ordinary negligence. The complaint alleges, among other things, that defendant medical providers and pharmacies "knew or should have known" of the risk that Witt would develop substance abuse disorder and then drive while impaired, and that they acted negligently "despite knowing or having reason to know" of that risk. Those allegations are sufficient to plead a risk that was reasonably foreseeable to defendant medical providers and pharmacies at the time of their allegedly negligent conduct. The complaint does not allege that the defendants' conduct "created the risk," though it is possible that a jury could reach that conclusion from the facts alleged. I also agree with the majority opinion that plaintiff's failure to plead that defendant medical providers and pharmacies had a special relationship with Stone did not shield them from liability for negligence. Stated another way, I agree with the majority that the defendants' special relationship with Witt, their patient, did not limit their duty to protecting Witt from harm.

befell plaintiff, and that kind of harm was reasonably fore-
seeable based on the facts that the defendant knew or rea-
sonably should have known at the time.[8]

Stating that a plaintiff must plead facts that would
permit a finding that the defendant had created the risk to
state a claim for ordinary negligence is confusing, not clar-
ifying. "Creating the risk" is the foundation of the "duty"
approach that was adopted in the *1 Restatement (Third) of
Torts: Liability for Physical and Emotional Harm* section 7
(2010) ("An actor ordinarily has a duty to exercise reason-
able care when the actor's conduct creates a risk of phys-
ical harm."); 2 *Restatement (Third) of Torts: Liability for
Physical and Emotional Harm* § 37 (2012) ("An actor whose
conduct has not created a risk of physical or emotional harm
to another has no duty of care to the other unless a court
determines that one of the affirmative duties provided in
§§ 38-44 is applicable."). Under the *Restatement (Third)*
approach, whether the actor's conduct "created" the risk of
harm—thereby giving rise to a "duty" to exercise reasonable
care—is a question of law for the court. *See* 1 *Restatement*
§ 6 ("An actor whose negligence is a factual cause of physical
harm is subject to liability for any such harm within the
scope of liability, *unless the court determines that the ordi-
nary duty of care is inapplicable.*" (Emphasis added.)).

But that is exactly the approach that we rejected
in *Fazzolari* when we declined to include "duty" as an ele-
ment of an ordinary negligence claim. *See Moody v. Oregon
Community Credit Union*, 371 Or 772, 783, 542 P3d 24 (2023)
(stating that the court in *Fazzolari* had "stepped away from"
the traditional concepts of "duty" and "breach of duty" in

---

[8] The majority opinion suggests that this concurrence is an "effort to revise"
this court's formulation of the test for ordinary negligence and concludes that the
effort "faces an uphill battle" given the number of cases that quoted *Fazzolari*
for that formulation. 374 Or at 541. I do not dispute that many of our prior cases
quoted the "creation of the risk" sentence from *Fazzolari*. But none of those cases
*applied* that principle in determining whether a complaint was subject to dis-
missal because the plaintiff had failed to plead and prove that the defendant's
negligent conduct created the risk. The point of this concurrence is to clarify
that "creating the risk" is not—and never has been—a required element, not to
"revise" the test for ordinary negligence. The fact that this court's opinions "occa-
sionally have used other phrasing" in describing the elements of an ordinary
negligence claim, as the majority opinion acknowledges, 374 Or at 540 n 7, shows
that clarification is warranted.

determining whether a plaintiff had a viable negligence claim); *Towe*, 357 Or at 86 (noting that, under *Fazzolari*, the traditional duty-breach analysis "is supplanted by" foreseeability in an ordinary negligence claim).

The majority opinion's insistence that, to state a claim for negligence, a plaintiff must allege that the defendant's negligent conduct *created* a risk of the type of harm that befell the plaintiff raises a new basis for courts to dismiss a negligence claim, thereby diminishing the jury's role. If there was evidence that a defendant knew or reasonably should have known of a risk of the type of harm that befell the plaintiff, but a court concludes that the defendant's conduct did not *create* that risk, then under the majority opinion's approach, the court must dismiss the claim instead of letting the jury decide as a factual matter whether the risk was reasonably foreseeable. I would let the jury decide.

If, as the majority opinion states, a plaintiff must plead and prove facts "to permit a finding" that the defendant's conduct unreasonably created a foreseeable risk of harm, then the jury must make that finding at trial if it decides to return a verdict in the plaintiff's favor. That would require courts to develop a new jury instruction, because our current Uniform Civil Jury Instructions (UCJIs) do not address a finding that the defendant's conduct created the risk.[9] UCJI 20.01 states that, to prove a common-law negligence claim in Oregon, the plaintiff must prove three elements: (1) the defendant's conduct was negligent; (2) the defendant's negligent conduct was a cause of harm to the plaintiff; and (3) the harm was reasonably foreseeable.[10] There is no UCJI on how a jury would decide whether the defendant's conduct *created* the risk of harm.[11]

---

[9] This court has explained that, although uniform jury instructions are not sources of law, "it is often helpful to consider how sometimes elusive legal principles are understood and applied in practice by the trial judges and lawyers who are charged with following them." *Piazza*, 360 Or at 71 n 7.

[10] Negligent conduct can include both negligent actions and negligent failures to act. *See* UCJI 20.02 (stating that a person's "conduct" is negligent if the person fails to use reasonable care "when that person does something that a reasonably careful person would not do *or fails to do something that a reasonably careful person would do* under similar circumstances" (emphasis added.)).

[11] The foreseeability instruction states that "two things must be foreseeable" to establish liability for common-law negligence: (1) the plaintiff "must be

Under our current uniform instructions—drafted by the Uniform Civil Jury Instructions Committee based on *Fazzolari* and its progeny—liability for common-law negligence is based on the foreseeability of the risk, not on whether the defendant's conduct *created a risk* of the type of harm that befell the plaintiff. By suggesting that a defendant can be liable for negligence only if the defendant's conduct created the risk, the majority opinion creates unnecessary confusion and uncertainty in the law.

The majority opinion suggests that my approach "blurs a key distinction between claims that depend on the plaintiff pleading and proving facts that establish a special circumstance or relationship and claims that do not." 374 Or at 540-41. That is not correct. My approach recognizes that distinction, but it does not use the concept of "creating the risk" as a basis for making it. Instead, the distinction, in my view, depends on the nature of the defendant's *duty* that is at issue, as our prior cases have recognized.

Where the plaintiff is relying on the ordinary duty of reasonable care, the plaintiff need not plead and prove a special relationship because "everyone owes each other a duty to act reasonably in light of foreseeable risks of harm." *Towe*, 357 Or at 86. Where the plaintiff—or the defendant—contends that the nature of the duty is different, then the party asserting a difference—that the duty goes further, is more limited, or does not exist at all—must allege facts showing the reason for the difference. That is because "the nature and scope of the duty owed by the defendant to the plaintiff can be created, defined, or limited" by the circumstances, status of, or relationship between the parties. *Id.*; *see also Fazzolari*, 303 Or at 17 (stating that the duty or ordinary care applies "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty"); *McEvoy v. Helikson*, 277 Or 781, 785-89, 562 P2d 540 (1977) (holding that plaintiff's "allegations of a breach of the duty owed" by an attorney to a non-client based on a stipulated court order were

_____

within the general class of persons that one reasonably would anticipate might be threatened by the defendant's conduct"; and (2) "the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct." UCJI 20.03.

sufficient to state a claim because the attorney "knew" that the stipulation was intended to protect the plaintiff from a foreseeable danger).

That approach is consistent with how the majority opinion "conceptualize['s] the universe of negligence claims[.]" 374 Or at 533. The majority sees negligence claims "as falling into two overarching categories: those in which liability for harm actually resulting from the defendant's conduct is based on the ordinary rule of negligence and those in which special circumstances either expand or limit the scope of liability for harm actually resulting from the defendant's conduct." *Id.*. I agree with that description of the two categories of negligence *liability*.

But I disagree with what the majority opinion relies on to distinguish between those two categories. In the majority's view, the first category is defined by conduct that created the *risk*, and the second category is defined by the existence of a special relationship or status that created or limited the defendant's *duty*. Those factors are not aligned. That suggests to me that they are not the distinguishing factors at all. In my view, in the first category of cases, a plaintiff need not allege a *duty* because that duty always exists, whereas, in the second category, the claim is based on a *duty* that is created or limited by the parties' status or relationship. Those distinguishing factors are aligned.

Thus, a plaintiff asserting a claim within the first category need only establish that the risk was foreseeable to the defendant—that is, that the defendant knew or should have known of the risk—because the duty is always there. Within the second category, a defendant may be liable because the defendant's duty to avoid causing a certain type of harm arises from the relationship between the parties, as we concluded in *Tomlinson*. Alternatively, a defendant's liability may be limited—as we concluded in *Mead* and *Cramer*, for example—because the defendant's status or lack of a special relationship with the injured person meant that the defendant did not have a *duty* to protect the plaintiff from the type of harm that occurred. Thus, liability in the second category may result from the breach of a *duty* that exists because of the parties' status or relationship, or liability may

be limited because the parties' status or absence of a special relationship means that the defendant does not have a *duty*.[12] Whether or not the defendant's conduct created the risk has nothing to do with determining liability in either category.

Our disagreement over how we articulate the fundamental elements of a common-law negligence claim and how we analyze the legal limits of liability for negligence may not make a difference in this case, but it might in future cases. Given the uncertainty raised by our prior negligence cases, as noted at the outset of this concurrence, we need to be accurate, precise, and consistent in how we articulate the elements and analyze the scope of liability in common-law negligence cases. I write separately to highlight our disagreement for that reason, not because of a "mistaken concern that our traditional formulation somehow undermines the significance of foreseeability," as the majority opinion suggests. 374 Or at 538.

In summary, the duty to exercise reasonable care to avoid causing physical harm in a negligence case depends on whether the risk of that type of harm is reasonably foreseeable to the defendant. A risk is reasonably foreseeable if it follows from the facts that the defendant knew or reasonably should have known about the risk at the time of the defendant's negligent conduct. If the defendant's conduct *created* a risk of harm, that risk likely would be reasonably foreseeable in most cases, but *creating the risk* is not an element that a plaintiff must plead to state a common-law negligence claim. Because the majority opinion erroneously states that it is, I cannot join those parts of the opinion. Nonetheless, I agree with the majority that the trial court erred in dismissing plaintiff's common-law negligence claims against these defendants.

Accordingly, I respectfully concur.

---

[12] As this court has observed, *duty* "is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question." *Donaca v. Curry Co.*, 303 Or 30, 33-34, 734 P2d 1339 (1987) (internal quotation marks omitted); *see also Buchler v. Oregon Corrections Div.*, 316 Or 499, 509, 853 P2d 798 (1993) (duty "is a method of describing how the law limits the circumstances or conditions under which one member of society may expect another to pay for a harm suffered"). Thus, a court's conclusion that a defendant does or does not have a *duty* is just a shorthand way of saying that the common-law rule provides for—or limits—liability in each situation.